## PEARL WHITE *v.* EARL W. WHITE

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and ALCORN, Js.

1

Argued April 3—decided May 22, 1951

*Leslie N. Davis,* for the appellant (defendant).

*Richard S. Weinstein,* with whom, on the brief, was *Sidney Vogel,* for the appellee (plaintiff).

INGLIS, J.  The complaint in this action contained two counts.  In one, Earl Carl White, a young child, by his mother as guardian and next friend sought an order for future support from his father.  In the other, Pearl White, the child's mother, sought to recover expenditures which she had made for her son's support prior to the institution of the action.  In a counterclaim, the defendant prayed an order for the custody of the child.

The case was referred to a state referee.  His finding, as corrected by the trial court in connection with its ruling on a demurrer addressed to the remonstrance and as modified as to a mathematical calculation, sets forth the following facts: The plaintiff, Pearl White, and the defendant were married in Tulsa, Oklahoma, on April 8, 1944.  At that time the plaintiff was a resident of Oklahoma and the defendant, although in military service, was a resident of Connecticut.  Their child, Earl Carl, was born March 14, 1945.  Thereafter, the couple and their child resided in Norwalk, Connecticut, until January 30, 1947.  On that date the plaintiff, without the consent of the defendant, left him and took the child with her.  They went to Lexington, Kentucky, for a short time and then to Oklahoma,

where they have since resided. The defendant has been domiciled in Connecticut ever since he and the plaintiff started to live here.

On August 11, 1947, the plaintiff filed in an Oklahoma district court a petition for divorce from the defendant, making oath that she was then, and had been for more than one year immediately preceding, an actual bona fide resident of Oklahoma. The statutes of Oklahoma require that the plaintiff in an action for divorce must have been an actual resident, in good faith, of the state for one year. Okla. Stat. tit. 12, § 1272 (1941). The defendant knew of the pendency of the divorce action and retained counsel in Oklahoma but did not enter any appearance. On October 15, 1947, a decree of divorce was entered in which the plaintiff was awarded sole custody of the child.

The defendant has not contributed anything to the support of the child since the separation of the parties in January, 1947, although requested to do so by the plaintiff. His position has been that he was willing and able to furnish support at his home in Norwalk but that he would not contribute unless the plaintiff would agree to some plan which gave part-time custody to him. The plaintiff has refused to agree to any such plan. She has supported the child at a total expense of $975. Her earnings are $30 a week plus meals and uniforms. The defendant, since the divorce decree, has married and has one child of the marriage. He is a carpenter and has an average income of $2000 a year. It would be for the best interest of the child Earl Carl that he remain in the custody of the plaintiff without any particular arrangement for partial custody by or a right of visitation in the defendant.

The record is in an unsatisfactory condition in that there is no finding of the conclusions of law made by the trial court upon the report of the referee. Inas-

much, however, as the parties have treated the memorandum of decision as a statement of those conclusions, we will do likewise. The court concluded that it was not necessary to determine the validity of the Oklahoma divorce decree; that the present custody and control of the child by the plaintiff are not wrongful; that the defendant is liable for the support of the child and during the period mentioned in the complaint failed to discharge that obligation; that the best interest of the child requires that he remain with his mother; and that it is equitable that the defendant be required to pay $8 a week to the plaintiff toward the support of the child. Judgment was rendered for the plaintiff on both counts of the complaint and on the counterclaim.

At common law the primary obligation for the support of a minor legitimate child rests upon the father. *Bohun* v. *Kinasz*, 124 Conn. 543, 546, 200 A. 1015. The same is true under § 7308 of the General Statutes. *Churchward* v. *Churchward*, 132 Conn. 72, 79, 42 A. 2d 659. This obligation is not terminated per se by the divorce of the parents of the child; *Welch's Appeal*, 43 Conn. 342, 350; although, by virtue of § 7340 of the General Statutes, after divorce the obligation is upon both parents to maintain the children of their marriage according to their respective abilities and the court may inquire into the pecuniary ability of each and make such decree against either or both for such maintenance as it considers just. *Castagnola* v. *Fatool*, 136 Conn. 462, 465, 72 A. 2d 479. Correlative to the duty of the father to support is the right to the custody and companionship of the child. Ordinarily, therefore, a parent's obligation to support is suspended during such time as he is wrongfully deprived of the custody of his child. If he is entitled to custody and is willing and able to provide proper support in his own home, he is not liable for the child's support elsewhere. Where a

child has been removed from his father's home by his mother, immunity from liability for support arises 'in the event that such removal was wrongful. In the absence of a controlling order of court affecting the father's right of custody, the removal from the home provided by him will be rightful only if (1) the father is unwilling or unable to provide proper support under his own supervision, or (2) he has consented to the child's absence, or (3) the child's removal has been caused by the father's own fault. These principles are established at common law by the great weight of authority. *Shields* v. *O'Reilly,* 68 Conn. 256, 261, 36 A. 49; *Assman* v. *Assman,* 192 Mo. App. 678, 682, 179 S. W. 957; *People* v. *Shine,* 271 Ill. App. 479, 483; *McDaniel* v. *McDaniel,* 36 N. M. 335, 340, 15 P. 2d 229; *Mihalcoe* v. *Holub,* 130 Va. 425, 430, 107 S. E. 704; 39 Am. Jur. 689, § 53.

We have no statute which changes the common-law rule concerning a father's immunity from liability. General Statutes, § 7308, after providing among other things that both the husband and wife shall be liable for the cost of any article purchased by either for the support of the family, reads: "It shall be the duty of the husband to support his family, and his property when found shall be first applied to satisfy any such joint liability; and the wife shall be entitled to an indemnity from the property of the husband for any property of her own that shall have been taken, or for any money that she shall have been compelled to pay, for the satisfaction of any such claim." The effect of this statute is to permit a wife to recover from the husband such sums as she may have been compelled to expend for the support of the family. In this it modifies the common law. It does not, however, modify the common law determining the conditions excusing the husband from obligation to support his wife or child.

Under the statute, a wife may recover only in the event that the husband has failed to perform the obligation for support imposed upon him by the common law. As we said in *Cantiello* v. *Cantiello*, 136 Conn. 685, 691, 74 A. 2d 199, concerning the portion of the statute quoted above, "It is very apparent that it was not added as a limitation upon the defenses which might be available to a husband in an action brought against him by his wife."

Nor does the joint guardianship statute (General Statutes § 6850) give any added rights to a mother to recover from the father of a child for the child's support. It gives her a right to custody of a child equal to the right of the father, it is true, but it does not give her a paramount right. The father's rights as guardian continue even though the mother has removed the child from his custody. *Pfeiffer* v. *Pfeiffer*, 99 Conn. 154, 156, 121 A. 174. If we assume, therefore, without deciding, that the joint guardianship statute permits a mother to remove her child from the custody of the father, it does not follow that the father is by reason of this statute made responsible for the child's support if the removal was wrongful.

Under the well-established principles set forth above, in order to impose liability upon the defendant in this case it must appear either that there has been a valid judgment by which the defendant has been deprived of the right to custody of the child or that for some other reason the removal of the child from his custody was not wrongful. The burden of proof on these matters is upon the plaintiff. *Mihalcoe* v. *Holub*, 130 Va. 425, 430, 107 S. E. 704.

The judgment relied upon by the plaintiff is the Oklahoma decree purporting to grant her a divorce and the custody of the child. It is fundamental that to be entitled to full faith and credit in this state it is essential

that such a judgment be within the jurisdiction of the Oklahoma court. So far as the divorce feature of the judgment is concerned, the report of the referee as corrected makes no finding that the plaintiff was domiciled in Oklahoma at the time she instituted the action. Without jurisdiction of her domicil and without the defendant's having entered to defend, the court did not have jurisdiction. *Rice* v. *Rice,* 134 Conn. 440, 445, 58 A. 2d 523, aff'd, 336 U. S. 674, 676, 69 S. Ct. 751, 93 L. Ed. 957. Moreover, the referee found facts from which it could be inferred that the plaintiff had not resided in Oklahoma for one year next prior to the institution of the action. Lacking any evidence to the contrary, we assume that the residence requirement of the Oklahoma divorce statute would be given the same interpretation by the courts of that state as the comparable provision of our statute (§ 7334) has been given here. *Phoenix State Bank & Trust Co.* v. *Johnson,* 132 Conn. 259, 263, 43 A. 2d 738; *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 177, 132 A. 902. That is that the effect of such a residence requirement is to limit the court's jurisdiction to grant a divorce to those cases in which the requirement is met. *Marshall* v. *Marshall,* 130 Conn. 655, 656, 36 A. 2d 743; *Morgan* v. *Morgan,* 103 Conn. 189, 194, 130 A. 254. Accordingly, both because the plaintiff was not domiciled in Oklahoma and because she did not meet the residence requirement of the Oklahoma statute, the court there, so far as appears from the referee's report, was without jurisdiction to decree the divorce, and its decree is not entitled to full faith and credit in this state.

The fact that the Oklahoma court was without jurisdiction to decree the divorce is, at least under our law, decisive of the question whether in the divorce action it had jurisdiction to award custody of the child. It did not have that jurisdiction, because, except as an

incident to a divorce, the court could award custody only in a habeas corpus proceeding. *Dunham* v. *Dunham*, 97 Conn. 440, 444, 117 A. 504; *Morgan* v. *Morgan*, supra, 197. Aside from that, there is no finding that the child himself was domiciled in Oklahoma. The finding is that he was merely a resident of that state. There is some authority to the effect that the courts of the state of a child's residence have the power to determine his custody. *Finlay* v. *Finlay*, 240 N. Y. 429, 431, 148 N. E. 624; 39 Am. Jur. 605. This, however, is based upon the theory that in so far as custody is merely an incident of the status of parent and child the state as parens patriae can control the matters of custody of a resident child within its own borders. It does not follow even under these authorities that the award of custody based solely upon residence has any controlling effect outside of the state. The situation is analogous to one in which a court renders judgment on a debt against a nonresident, nonappearing defendant where property has been attached within the state. Such a judgment is good only as against the attached property within the control of the court. It is not good outside of the state. So, when a court awards custody of a merely resident child, such an award is effective only in so far as it affects the incidents of the parent-child status which are within the control of the court making the award. The weight of authority, and that to which we are committed, is that a judgment awarding custody of a child, in order to be entitled to full faith and credit outside of the state in which it is rendered, must be predicated upon jurisdiction of the domicil of the child. Mere residence is not enough. *Boardman* v. *Boardman*, 135 Conn. 124, 129, 62 A. 2d 521; 2 Beale, Conflict of Laws § 144.3; Restatement, Conflict of Laws § 117; see *Freund* v. *Burns*, 131 Conn. 380, 383, 40 A. 2d 754. In the present case, the Okla-

homa court on the corrected referee's findings did not have jurisdiction of the domicil of the child. For that reason its award of the custody to the plaintiff is not an adjudication that the defendant is not entitled to custody which must be recognized here.

The other question is whether there is any finding in the referee's report to support the conclusion of the trial court that the removal of the child from the defendant's custody was not wrongful. The finding is that the defendant was willing and able to support the child in his own home and that the child had been removed therefrom without the defendant's consent. The conclusion that the removal was not wrongful can be supported, therefore, only in the event that the removal was caused by the defendant's fault. The referee made no finding of any fault on the part of the defendant which caused or justified the child's removal or detention by the plaintiff. Accordingly, the sole reliance of the plaintiff in this matter is and must be upon the effect of the judgment entered in the Oklahoma court. The claim is that that judgment makes it res adjudicata between the parties that the separation of the plaintiff from the defendant was caused by some fault of the defendant. If the judgment were a valid judgment entitled to full faith and credit, there would be merit to the claim. But, as we have already pointed out, that judgment was entered without jurisdiction. It is not entitled to full faith and credit in this state. It is not, therefore, so far as this state is concerned, an adjudication of any of the facts which were found in connection with it. Without the benefit of that judgment, the plaintiff is left without any finding that the defendant was at fault.

We conclude that the defendant's right to the custody of his child had not been terminated by any judgment which is entitled to full faith and credit and

that the conclusion of the trial court that the child's removal from the defendant's home was not wrongful was without support. Accordingly, the defendant is entitled to the benefit of the defense, accorded to him by common law, that his liability for the support of his child is suspended during such time as he is wrongfully deprived of his custody and companionship. In order to prevail upon a new trial, the plaintiff must prove either that the right of custody of the child has been removed from the defendant by a valid court order or that the removal or detention of the child was not wrongful. The court had no jurisdiction on the counterclaim to award custody or the right of visitation to the defendant. *Dunham* v. *Dunham*, 97 Conn. 440, 444, 117 A. 504. Accordingly, the court should have dismissed the counterclaim for lack of jurisdiction. Whether the court had power under the complaint to award partial custody or the right of visitation to the defendant as a condition to its judgment for support was not raised upon the trial. We therefore express no opinion on the question.

Inasmuch as there must be a new trial, we point out that, if it should eventuate that the divorce granted in Oklahoma is valid and entitled to full faith and credit, that fact would have an effect on the amount of damages and the amount of support to be awarded. If the parties have been divorced, then the obligation of the defendant is not for the full support of the child but, under § 7340 of the General Statutes, for only such portion thereof as his ability bears to the combined ability of himself and the plaintiff.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the counterclaim, and for a new trial of the issues on the complaint.

In this opinion the other judges concurred.